**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

FERNANDO C. GRIFFITH,
      *Petitioner,*

   v.

WARDEN,
      *Respondent.*

No. 3:23-cv-224-MGG

## RESPONSE TO ORDER TO SHOW CAUSE

The Court should dismiss Petitioner Fernando Griffith's petition for a writ of habeas corpus with prejudice because it is barred by the statute of limitations. Three of his grounds for relief are not cognizable. And his fourth ground is procedurally defaulted.

## JURISDICTION

Griffith is in custody at the Miami Correctional Facility for his 2001 Johnson County, Indiana, convictions for two counts of murder, one count of arson, and one count of burglary. He was sentenced to life without parole plus 36 years. He wants a writ of habeas corpus under 28 U.S.C. § 2254.

## STATEMENT OF THE FACTS

The Court must presume that the state courts correctly found the facts unless Griffith rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Griffith worked for Lloyd Georges, who was married to Judy (Ex. 7 at 1–2). Griffith frequently spent time at the Georges' home as a social guest and

occasionally spent time with Lloyd outside of work and social gatherings at the

Georges' home (Ex. 7 at 2). On May 18, 2000, Griffith presented a $10,000 check

drawn from the Georges' account and payable to Griffith at a credit union (Ex. 7 at

7).

> Early the next day,
>
> [t]he Greenwood Fire Department responded to a fire at the home of Lloyd and Judy Georges …. Investigators discovered the bodies of Lloyd and Judy, and autopsies confirmed that stab wounds were the cause of death. Investigators further determined the fire was intentionally set with an accelerant. Jewelry was missing from the house along with Lloyd's wallet. The Georges' car was also missing from the garage.
>
> The Greenwood police learned that a witness saw a black male carrying a gas can in the front yard of the Georges' house and walking into the front door of their home. A neighbor informed police that he saw the Georges' car pulling out of their garage the same morning around 5:05 a.m.

(Ex. 5 at 4). That same day, Griffith returned to the credit union to withdraw $1,000

and obtain a cashier's check for $2,000 (Ex. 7 at 7).

> The police found the [Georges'] car ablaze a few days later and ruled it arson because accelerant was used to fuel the fire.
>
> Assisting the Greenwood Police, Indianapolis Officer Jack Tindall and Detective Thomas Richard Tudor went to Griffith's apartment building around 10:15 p.m. on May 21st, where they noticed that Griffith smelled of burnt smoke and had band-aids on his hands and fingers. At Detective Tudor's direction, Officer Tindall transported Griffith to the Greenwood Police Department where Officer John Laut noticed the strong smoke odor and the band-aids while booking Griffith. Upon further inspection, Laut found one of Lloyd's rings in Griffith's pocket. Griffith was arrested between 10:20 p.m. and 11:10 p.m.

Greenwood Detective Patti Cummings directed Officer Tindall to bring Griffith to the interrogation room for questioning. When Griffith arrived, Detective Cummings advised him of his *Miranda* rights during the early morning hours of May 22. Griffith was held at the Greenwood Police Department before transport to the Johnson County Jail, which caused his name to be excluded from the jail population list of suspects who were to appear before the Magistrate within forty-eight hours. Later that day, police transported Griffith to the Johnson County Jail.

Hollis Kehrt was also arrested in connection with the present case. On May 23rd, the Greenwood Police, a captain from the Johnson County Jail, and the Johnson County Prosecutor wired Kehrt and placed him in the cell with Griffith to obtain "incriminating information" about the Georges' murder. Police placed Kehrt in the cell with Griffith before he appeared before a magistrate. The police were unable to collect any information, however, because they could not decipher any data from the wire.

The following day, police asked Griffith's girlfriend Jamie Young to make a controlled call in an effort to obtain incriminating information from Griffith. Though police instructed Young not to reveal that the call was controlled, she immediately did so, and Griffith revealed nothing.

The Greenwood Police prepared a probable cause affidavit on May 22nd, and revised it on May 23rd. On May 24th, Magistrate Craig Lawson conducted an initial hearing and determined that probable cause existed for Griffith's arrest.

The following day, Griffith's wife Elizabeth phoned Greenwood police and told them that Griffith wanted to speak with them. One day later, a judge granted an order to draw a sample of Griffith's blood. While en route to the hospital for the blood draw, Griffith confirmed that he wanted to speak with the Greenwood police.

At the later meeting with the Greenwood police, officers informed Griffith of his rights, including his right to counsel and right to remain silent, and Griffith signed a waiver. Griffith then confessed to the

murder of Lloyd and Judy Georges and the burglary and arson of their home.

(Ex. 5 at 4–5). He also told the police where to find other evidence of his crimes, including the gas can, which he had discarded near a car wash and the police found (Ex. 7 at 6–7). He directed the police to a pond, where they found footprints that matched footprints from the Georges' yard (Ex. 7 at 7). And on the ground outside of Griffith's girlfriend's residence, the police found Lloyd's watch (Ex. 7 at 7).

> Thereafter, the State charged Griffith with two counts of murder, one count of burglary as a class B felony, and one count of arson, a class B felony. A jury found him guilty of all counts. The court sentenced Griffith to life without parole for the murders, and two consecutive eighteen-year sentences for the counts of burglary and arson.

(Ex. 5 at 4–5).

On direct appeal to the Indiana Supreme Court, Griffith raised four issues (Ex. 3). First, he argued that the trial court should have suppressed his confession because the police arrested him without a warrant or probable cause (Ex. 3 at 25–29). The court determined that the police had probable cause:

> The evidence here indicates that Lloyd recently told a friend that his relationship with Griffith, who he called "Val," had become dire because he refused to purchase a vehicle for Griffith. Griffith's son confirmed that Val was Griffith. A neighbor reported that Lloyd argued with a black man who fit Griffith's description on his porch on the day of the fire. The Georges' car was missing and found ablaze two days later. A witness saw a black male carrying a gas can in the Georges' front yard and walk into the front door of their home. Furthermore, upon approaching Griffith's apartment, Officer Tindall immediately smelled the strong odor of smoke on Griffith and noticed band-aids on Griffith's hands and fingers. He also found one of Lloyd's rings in Griffith's pocket.

(Ex. 5 at 6).

Second, Griffith argued that the trial court should have suppressed his confession because the court did not appoint counsel for him during the probable cause hearing or when he confessed (Ex. 3 at 29–33). According to Griffith, this violated the Equal Protection Clause of the Fourteenth Amendment (Ex. 3 at 30–33). The supreme court concluded that the trial court correctly admitted his confession because "the Sixth Amendment right to appointed counsel at public expense attaches at the moment an information or indictment is filed" (Ex. 5 at 8). And "Griffith does not contend he suffered any damage by virtue of what occurred during his preliminary hearing, and when he asked to speak with the police and eventually confessed, he did so with full knowledge that legal help at public expense was just at the horizon" (Ex. 5 at 8). The court affirmed Griffith's convictions on May 16, 2003 (Ex. 5 at 1).

Third, Griffith argued that the trial court should have suppressed his confession because of the delay between his arrest and his probable cause hearing (Ex. 3 at 34–41). The State conceded, and the court agreed, that he 63-hour delay was unreasonable (Ex. 5 at 7). But the court concluded that "Griffith's confession was not the product of delay in bringing him before the magistrate" because his confession "did not occur until two days after he saw the magistrate. And it occurred because he asked to speak with officers from the Greenwood Police Department" (Ex. 5 at 7).

And fourth, Griffith argued that his confession should have been suppressed because it was coerced (Ex. 3 at 41–44). The court concluded that Griffith's confession was voluntary because he "signed a waiver after police informed him of his *Miranda* rights" and "asked his wife to inform police that he wished to speak with them" (Ex. 5 at 8). He "never invoked his right to remain silent …. He simply commented, 'I might as well not say anything more,' in response to the police not striking any deals with Griffith for his information. Yet, he continued to disclose information after this statement during the interrogation" (Ex. 5 at 8) (citation omitted).

On April 26, 2004, Griffith filed a petition for post-conviction relief (Exs. 1 at 18; 6 at 1–2; 7 at 19). The post-conviction court dismissed Griffith's petition on September 6, 2011, before reopening his case on October 3, 2011 (Ex. 6 at 5). Griffith ultimately alleged ineffective assistance of trial and appellate counsel (Ex. 7 at 20). The post-conviction court concluded that Griffith did not receive ineffective assistance of counsel and denied his petition on June 8, 2021 (Exs. 6 at 43; 7 at 50).

Griffith initiated an appeal in the Indiana Court of Appeals (Ex. 8 at 1). Based on a court order on December 13, 2021, his brief was due on January 12, 2022 (*see* Ex. 8 at 5). On December 9, 2021, he filed his first motion for extension of time, citing his prison transfer on October 14, 2021; a lockdown from November 15 to December 8; and a quarantine "since Nov. 29th" (Exs. 8 at 5; 9 at 1–2). He requested a 120-day extension (Ex. 9 at 2). Excluding the certificate of service and a

blank page, his motion was two handwritten pages (Ex. 9). The court granted his motion in part, giving him until February 11, 2022, to file his brief (Ex. 8 at 6).

Griffith filed his second motion for extension of time or a stay on February 4, 2022, explaining that he had not received a copy of the post-conviction record (Exs. 8 at 6; 10 at 3–4). He again cited his prison transfer on October 14, 2021, and alleged that he was still missing his legal materials and had gone to the library "2 ½ times" because of various lockdowns and quarantines (Ex. 10 at 5). Excluding the certificate of service, his motion was six handwritten pages (Ex. 10). The court ordered the post-conviction court to provide Griffith the record within 10 days and gave Griffith 40 days to file his brief, making it due on Monday, March 28, 2022 (Ex. 8 at 6).

On March 8, 2022, Griffith filed his third motion for extension of time (Exs. 8 at 7; 11). He stated that he had not received the post-conviction record until February 28, 2022, and was missing parts of the record (Ex. 11 at 1, 3). According to Griffith, "As of February 28th, the entire housing unit … in which Griffith resides went on lockdown, and while on lockdown Griffith cannot gain access to the law library to make copies, do research, or typing" (Ex. 11 at 3). He again cited missing legal materials (Ex. 11 at 3, 5). He asked for a 90-day extension (Ex. 11 at 5). Excluding the blank pages and certificate of service, his motion was three handwritten pages (Ex. 11). The court granted his motion "in part as a final extension," giving him until April 27, 2022, to file his brief (Ex. 8 at 7).

On April 18, 2022, Griffith filed a four-page, handwritten motion for the post-conviction court to produce a missing portion of the transcript (Ex. 8 at 7; 12 at 5–9). He also filed a two-page motion to stay briefing on April 21, 2022, citing the missing transcript (Exs. 8 at 7; 12). The court gave the post-conviction court 10 days to give Griffith the missing portions of the transcript and gave Griffith 40 days to file his brief, making it due on June 22, 2022 (Ex. 8 at 7).

Griffith did not file a brief by June 22, 2022 (Ex. 8 at 10). On August 3, 2022, he filed his fifth motion for extension of time, stating that he was still missing parts of the record from the post-conviction court and his direct appeal (Ex. 13 at 1–2). He also complained about his limited access to the library, missing legal materials, and lockdowns (Ex. 13 at 3–5). According to him, there have been "only approximately 150 days total where Griffith has not been on lockdown while at M.C.F., and during that time he has been issued approx. 16 call out passes to the law library," and an unspecified number of them were canceled (Ex. 13 at 5). He requested a 90-day extension (Ex. 13 at 1). Excluding the certificate of service and exhibits, his motion was five handwritten pages (Ex. 13). The court granted his motion in part, giving him until October 3, 2022, to file his brief (Ex. 8 at 7). The court warned that "[f]ailure to comply with the terms of this order may result in dismissal of this appeal with prejudice" (Ex. 8 at 8).

On September 22, 2022, Griffith filed his sixth motion for extension of time (Exs. 8 at 9; 14). He stated that he was missing the record from his direct appeal and cited a lockdown since July 5, 2022 (Ex. 14 at 1). He requested a 90-day

extension (Ex. 14 at 1). Excluding the certificate of service, his motion was one handwritten page (Ex. 14). The court granted his motion "in part as a final extension," giving him until October 18, 2022, to file his brief (Ex. 8 at 9). The court again cautioned that "[f]ailure to timely file a brief may result in the dismissal of this appeal. See Ind. Appellate Rule 45(D)" (Ex. 8 at 9).

Griffith did not file a brief by October 18, 2022 (Ex. 8 at 9). He tried to file his seventh motion for extension on October 24, but the court rejected it (Exs. 8 at 9; 15). In his two-page handwritten motion, Griffith again cited the lockdown and stated, "there has been no law library access whatsoever for the inmate population" (Ex. 15 at 1). He also stated, "As of 10-18-22, MCF has been prioritizing inmates with a court deadline accessing the law library in order to complete their legal work" (Ex. 15 at 2). He continued, "Now that Griffith is again able to regularly access his files on the law library computer, with the exception of the abandoned claims, a brief and appendix can be submitted no later than December 5, 2022" (Ex. 15 at 2). He requested a 40-day extension (Ex. 15 at 2). The court dismissed his appeal with prejudice on November 1, 2022 (Exs. 8 at 9; 16).

On March 20, 2023, Griffith filed a petition for a writ of habeas corpus in this Court (Doc. 1).

**ARGUMENT**

**The Court should dismiss Griffith's petition with prejudice.**

The Court "must *deny* relief" if Griffith cannot "satisfy either [the Supreme] Court's equitable precedents or AEDPA." *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). The Antiterrorism and Effective Death Penalty Act contains a "strict 1-year

9

statute of limitations." *Christenson v. Roper*, 574 U.S. 373 (2015) (per curiam). In addition to filing his petition on time, Griffith had to present his claims to the state courts in the right way at the right time. *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). Relief is only available for violations of federal law. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). But not all federal claims are cognizable. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976).

The Court should dismiss Griffith's petition with prejudice because it is barred by the statute of limitations. Grounds One, Two, and Three are not cognizable. And Ground Four is procedurally defaulted.

**I.**
**Griffith's petition is barred by the statute of limitations.**

Griffith missed the statute of limitations to file his petition. He had one year from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

10

28 U.S.C. § 2244(d)(1). The statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

The Indiana Supreme Court affirmed Griffith's convictions on May 16, 2003 (Ex. 5 at 8). He did not file a petition for a writ of certiorari in the Supreme Court of the United States, so his judgment became final 90 days later, on August 14, 2003. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("[T]he judgment becomes final ... when the time for pursuing direct review ... expires."); Sup. Ct. R. 13(1) (2003) (certiorari petitions must be filed within 90 days). He waited 255 days to toll the statute of limitations by filing a petition for post-conviction relief on April 26, 2004 (Exs. 1 at 18; 6 at 1–2; 7 at 19). The limitations period tolled until September 6, 2011, when the post-conviction court dismissed Griffith's petition (Ex. 6 at 5). *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (holding that "the statute of limitations is tolled only while state courts review the application"). Twenty-six more days elapsed (bringing the tally to 281) before the period started tolling again when the post-conviction court reopened Griffith's case on October 3, 2011 (Ex. 6 at 5). The period tolled until the Indiana Court of Appeals dismissed Griffith's appeal with prejudice on November 1, 2022 (Exs. 8 at 9; 16). *See Lawrence*, 549 U.S. at 332. Griffith had 84 days remaining, making his habeas petition due on January 24, 2023. He did not file it until March 20, 2023, so he was 54 days late (Doc. 1).

Griffith thinks he filed his petition on time, but he makes three calculation errors (Doc. 1 at 12). His three errors added 111 days to his limitations period: 40

11

days plus 26 days plus 45 days. Because he missed the statute of limitations by 54 days, he could only afford to make one of the three calculation errors.

Griffith first pins his final judgment 90 days after the date that the Indiana Supreme Court certified its opinion (June 26, 2003) instead of 90 days after the court entered its opinion (May 16, 2003) (Doc. 1 at 12). But "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." Sup. Ct. R. 13(3); *see Clay v. United States*, 537 U.S. 522, 527 (2003) (contrasting the Supreme Court's rule with other finality definitions); Ind. Appellate R. 65 (Indiana's certification rule). This mistake added 40 days.

Second, Griffith ignores the 26 days that his post-conviction petition was not pending when the court dismissed it (Doc. 1 at 12). Post-conviction proceedings are pending "only while state courts review the application." *Lawrence*, 549 U.S. at 332. No state court was reviewing Griffith's application when his petition was dismissed for 26 days.

Griffith's third mistake is like his second. He gives himself 45 extra days after the Indiana Court of Appeals dismissed his post-conviction appeal on November 1, 2022 (Doc. 1 at 12). This is presumably the time that he could have filed a petition to transfer to the Indiana Supreme Court: "Indiana's denial of post-conviction relief became final on December 16, 2022" (Doc. 1 at 12). Although a direct appeal includes "the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A),

the statute of limitations is only tolled when post-conviction proceedings are "pending," *id.* § 2244(d)(2). Griffith's application was not pending after his appeal was dismissed because no state court was reviewing his application. *See Lawrence*, 549 U.S. at 332. He did not file a petition to transfer in the Indiana Supreme Court, even though he could have (Ex. 8 at 9). *See* Ind. Appellate R. 57(B)(4) (providing that transfer may be sought from "an order dismissing an appeal").

Contrary to his miscalculation, Griffith also suggests that his statute of limitations has not even begun to run because State actors continue to impede him from filing his petition: "Pursuant to [28 U.S.C. § 2244(d)(1)(B)], there still exist impediments to Griffith filing his Habeas Corpus petition caused by State actors" (Doc. 1 at 13). He is wrong for at least two reasons. To state the obvious, he filed his habeas petition. If he means that his statute of limitations began to run later, the "impediments" that he identifies occurred while his statute of limitations was tolled because his post-conviction proceedings were pending (*see* Doc. 1 at 12–13). None of those actions caused him to wait 255 days to file his petition for post-conviction relief, to have his petition dismissed for 26 days, or to wait another 138 days to file his habeas petition. In fact, he admitted in his seventh and final motion for extension of time in his post-conviction appeal that he could "regularly access his files on the law library computer" by at least October 24, 2022, and could file a brief by at least December 5, 2022 (Ex. 15 at 2).

13

Griffith filed his petition late. He does not argue that he is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010). The Court should dismiss his petition with prejudice.

## II.
## Grounds One, Two, and Three are not cognizable.

Even if Griffith had filed his petition on time, he still would not be entitled to habeas relief for any of his claims. In Grounds One, Two, and Three, he raises the Fourth Amendment claims that he raised in the Indiana Supreme Court on direct appeal (Doc. 1 at 3–4; Exs. 3 at 26–29, 34–41; 5 at 6). But Fourth Amendment "claims are not cognizable in federal habeas if the state courts provide a mechanism for review." *Brown v. Davenport*, 142 S. Ct. 1510, 1523 (2022) (citing *Stone v. Powell*, 428 U.S. 465, 494–95 (1976)). This is because "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force" in federal habeas proceedings. *Stone*, 428 U.S. at 494–95.

The Indiana courts not only provide a mechanism for review, but they also reviewed Griffith's claims. The trial court considered his claims when he moved to suppress his confession (*see* Ex. 5 at 6). And the Indiana Supreme Court adjudicated his claims on direct appeal (Ex. 5 at 6).[1] He cannot present them again in a federal habeas petition. *See, e.g., Ben-Yisrayl v. Buss*, 540 F.3d 542, 551–52 (7th Cir. 2008)

---

[1] Griffith apparently confuses his direct and post-conviction appeals when he states that the court dismissed his appeal without reaching the merits (Doc. 1 at 3, 4, 6).

14

(holding that the petitioner's Fourth Amendment challenge to his confession was barred because the Indiana courts adjudicated his claim).

Ground Three is also not cognizable because Griffith alleges a violation of an Indiana statute (Doc. 1 at 5–6). Federal habeas relief is only available for violations of federal law. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Griffith cannot obtain relief for Grounds One, Two, or Three.

### III.
### Ground Four is procedurally defaulted.

Griffith's claims in Ground Four are procedurally defaulted. There are two ways to procedurally default a claim. The first is by not fairly presenting it in state court. *See Picard v. Connor*, 404 U.S. 270, 275–76, 278 (1971). The petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). That means "fully and fairly present[ing] it to the Indiana Supreme Court in [a] petition for transfer to that court." *Hinesley v. Knight*, 837 F.3d 721, 735 (7th Cir. 2016) (citing *Boerckel*, 526 U.S. at 845). The second path to procedural default is when the state court "rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted).

Griffith procedurally defaulted his ineffective-assistance-of-counsel claims in Ground Four both ways. First, he did not fairly present them because he did not

15

raise them in the Indiana Court of Appeals or in the Indiana Supreme Court. He raised ineffective assistance of trial and appellate counsel in the post-conviction court (*see* Ex. 7 at 21–49). But he never filed a brief in the court of appeals (*see* Ex. 8). And after the court of appeals dismissed his appeal for not filing a brief, he did not file a petition to transfer to the supreme court (Ex. 8 at ), which he could have done. *See* Ind. Appellate R. 57(B)(4) (providing that transfer may be sought from "an order dismissing an appeal").

The court of appeals' dismissal provides the second basis for finding procedural default. The court dismissed Griffith's appeal because he did not comply with Indiana Appellate Rule 45(D) (Ex. 16). Under that rule, "[t]he appellant's failure to file timely the appellant's brief may subject the appeal to dismissal." Ind. Appellate R. 45(D). The Indiana courts regularly enforce this rule. *See, e.g.*, *Martin v. Indiana*, No. 2:18-cv-441, 2020 WL 9348174, at *5 (S.D. Ind. Mar. 9, 2020); *Ferguson v. Valley*, No. 2:15-cv-176, 2016 WL 3902608, at *1 (S.D. Ind. July 19, 2016); *Leyba v. Superintendent*, No. 3:11-cv-198, 2013 WL 351107 (N.D. Ind. Jan. 29, 2013). This is an independent and adequate state ground. *See Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) ("Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review.") (citing *Harris v. Reed*, 489 U.S. 255 (1989)).

Griffith cannot excuse his procedural default. He does not claim to be innocent of the crimes that he confessed to, so he must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."

16

*Coleman*, 501 U.S. at 750. Cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 752. He must show that "an objective factor, external to the defense, … impeded [his] efforts to raise the claim in an earlier proceeding." *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015) (quoting *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013)). If the cause can be fairly attributed to him, then it is not external to the defense. *Id.* at 506 (citing *Coleman*, 501 U.S. at 753). And actual prejudice means "not merely that errors at … trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

As cause, Griffith offers a list of alleged impediments to filing his post-conviction brief in the Indiana Court of Appeals (Doc. 1 at 12–13). But even if he presented a sufficient obstacle, it could not excuse his procedural default because it did not prevent him from filing a petition to transfer in the Indiana Supreme Court. In his first six motions for extension of time in the court of appeals, Griffith complained about a prison transfer, missing legal materials and records, lockdowns, quarantines, and limited library access (Exs. 9–14). In his seventh, however, he explained, "As of 10-18-22, MCF has been prioritizing inmates with a court deadline accessing the law library in order to complete their legal work. … Now that Griffith is again able to regularly access his files on the law library computer, with the exception of the abandoned claims, a brief and appendix can be submitted no later

17

than December 5, 2022" (Ex. 15 at 2). His petition to transfer from the dismissal was due on December 16, 2022 (*see* Ex. 8 at 9). Ind. Appellate R. 57(C)(1) (45 days after dismissal). By his own admission, he could have filed a timely petition to transfer. He did not, however, so he did not do everything that he could have done to fairly present his claims in state court.

Even so, Griffith's list of impediments is not sufficient cause to excuse his procedural default in the Indiana Court of Appeals because he cannot show that "interference by state officials" made "compliance with a procedural rule 'impracticable.'" *Johnson*, 786 F.3d at 506 (quoting *Murray*, 477 U.S. at 488). Indiana appellants, including appellants who represent themselves, are expected to file their briefs in 30 days. Ind. Appellate R. 45(B); *see, e.g.*, *Stark v. State*, 204 N.E.3d 957, 963 (Ind. Ct. App. 2023) (explaining that pro se parties are held to the same standards as attorneys). Based on an order from the court, Griffith's first due date to file his brief was January 12, 2022 (*see* Ex. 8 at 5). The court generously granted him six extensions, making his last due date October 18, 2022 (Ex. 8 at 5–9). That means Griffith had over nine months to file a brief, more than nine times the normal amount of time that appellants need. Instead of filing a brief, he filed seven motions for extension of time (Exs. 9–15). The combined length of his motions rivaled a brief: 21 handwritten pages. By comparison, his habeas petition is only 13 pages (Doc. 1).

Griffith complains that the prison lost his "legal papers and evidence/record to be used for any P-C.R. petition and Appeal" (Doc. 1 at 12). By his own admission

in his third and fourth motions for extension of time, however, he had most of the post-conviction record by February 28, 2022 (Exs. 11 at 1, 3; 12 at 1–2). And he "received copies of documents previously omitted from the Clerk's Record" on June 3, 2022 (Ex. 13 at 1). In fact, he attached a portion of his post-conviction transcript to his fifth motion for extension of time (Ex. 13 at 23).

Griffith also cites an unspecified prison lockdown (Doc. 1 at 12). But his units were not on constant lockdown during the nine months that his post-conviction appeal was pending (*see* Ex. 17). The last lockdown ended on July 13, 2022, three months before his final brief due date (Ex. 17 at 2). And even during a lockdown, he could make written library requests and library staff makes rounds in the housing units (Ex. 17 at 1). He also has a tablet computer to conduct legal research (Ex. 17 at 2). So he has not shown an external obstacle that prevented him from raising his claims in state court.

Even if Griffith could show cause, he does not contend that he was actually prejudiced. He does not try to meet that standard, and it is difficult to imagine that he could. As the post-conviction court explained, "the evidence against Griffith is overwhelming" (Ex. 7 at 35). Not only did he confess to his crimes, but "he was in possession of Lloyd Georges' ring at the time of his arrest; his blood was found at the crime scene; at the time of his first encounter with law enforcement officers following the crime he smelled of smoke and his hands were cut" (Doc. 7 at 35). *See, e.g.*, *Anderson v. Benik*, 417 F.3d 811, 815 (7th Cir. 2006) (declining to address the merits of procedurally defaulted claims when the petitioner did not even allege he

19

could meet the requirements for cause and prejudice). Griffith could not excuse his procedural default even if he had filed his petition on time.

## CONCLUSION

The Court should dismiss Griffith's late petition for a writ of habeas corpus with prejudice. If the Court determines that Griffith's petition is not time-barred and that procedural default does not bar his claims in Ground Four, then Respondent respectfully requests additional time to brief the merits of the claims in Ground Four and to submit the complete state-court record.

Respectfully submitted,


THEODORE E. ROKITA
Indiana Attorney General

/s/ Jesse R. Drum
Jesse R. Drum
Assistant Section Chief, Criminal Appeals

OFFICE OF INDIANA ATTORNEY GENERAL
TODD ROKITA
Indiana Government Center South
302 West Washington Street, Fifth Floor
Indianapolis, Indiana 46204-2770
317-234-7018 (telephone)
Jesse.Drum@atg.in.gov

**EXHIBITS TO RESPONDENT'S RESPONSE TO ORDER TO SHOW CAUSE**

Respondent submits the following as exhibits to the Response to Order to Show Cause:

Exhibit 1:    Chronological Case Summary, *State v. Griffith*, No. 41C01-0005-CF-114;

Exhibit 2:    Docket, *Griffith v. State*, No. 41S00-0109-CR-438;

Exhibit 3:    Brief of Appellant, *Griffith v. State*, No. 41S00-0109-CR-438;

Exhibit 4:    Brief of Appellee, *Griffith v. State*, No. 41S00-0109-CR-438;

Exhibit 5:    Opinion, *Griffith v. State*, No. 41S00-0109-CR-438;

Exhibit 6:    Chronological Case Summary, *Griffith v. State*, No. 41C01-0405-PC-1;

Exhibit 7:    Judgment, *Griffith v. State*, No. 41C01-0405-PC-1;

Exhibit 8:    Docket, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 9:    First Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 10:    Second Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 11:    Third Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 12:    Fourth Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 13:    Fifth Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 14:    Sixth Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 15:    Seventh Extension, *Griffith v. State*, No. 21A-PC-1781;

Exhibit 16:    Order Dismissing Appeal, *Griffith v. State*, No. 21A-PC-1781; and

Exhibit 17:    Letter from DOC.

## CERTIFICATE OF SERVICE

I certify that on May 31, 2023, I served the foregoing document upon the following person by first-class U.S. Mail, postage prepaid:

Fernando Griffith
105877
Miami Correctional Facility
3038 West 850 South
Bunker Hill, Indiana 46914-9810


/s/ Jesse R. Drum
Jesse R. Drum

22