UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FERNANDO C. GRIFFITH,
          *Petitioner*,

     v.

WARDEN,
          *Respondent*.

No. 3:23-cv-224-MGG

## SUPPLEMENTAL RESPONSE TO ORDER TO SHOW CAUSE

The Court ordered a supplemental response to the merits of Petitioner Fernando Griffith's arguments that he received ineffective assistance from his counsel at trial and on appeal (Doc. 26), which he raises in Ground Four of his petition for a writ of habeas corpus. In addition to being barred by the statute of limitations and procedurally defaulted (*see* Doc. 8 at 10–14, 15–20), his claims are meritless.

## JURISDICTION

Griffith is still in custody at the Miami Correctional Facility for his 2001 Johnson County, Indiana, convictions for two counts of murder, one count of arson, and one count of burglary. He was sentenced to life without parole plus 36 years. He seeks a writ of habeas corpus under 28 U.S.C. § 2254.

**STATEMENT OF THE FACTS**

The Court must presume that the state courts correctly found the facts unless Griffith rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[1]

## A. Griffith's crimes

Griffith worked for Lloyd Georges, who was married to Judy (Doc. 8-7 at 1–2). Griffith frequently spent time at the Georges' home as a social guest and occasionally spent time with Lloyd outside of work and social gatherings at the Georges' home (Doc. 8-7 at 2). On May 18, 2000, Griffith presented a $10,000 check drawn from the Georges' account and payable to Griffith at a credit union (Doc. 8-7 at 7).

Early the next day,

> [t]he Greenwood Fire Department responded to a fire at the home of Lloyd and Judy Georges …. Investigators discovered the bodies of Lloyd and Judy, and autopsies confirmed that stab wounds were the cause of death. Investigators further determined the fire was intentionally set with an accelerant. Jewelry was missing from the house along with Lloyd's wallet. The Georges' car was also missing from the garage.

> The Greenwood police learned that a witness saw a black male carrying a gas can in the front yard of the Georges' house and walking into the front door of their home. A neighbor informed police that he saw the Georges' car pulling out of their garage the same morning around 5:05 a.m.

---

[1] Respondent repeats many of the facts from the response to order to show cause with updated citations to the Court's docket and supplements the facts necessary to address Griffith's ineffectiveness arguments.

(Doc. 8-5 at 4). That same day, Griffith returned to the credit union to withdraw

$1,000 and obtain a cashier's check for $2,000 (Doc. 8-7 at 7).

A few days later,

[t]he police found the [Georges'] car ablaze … and ruled it arson
because accelerant was used to fuel the fire.

Assisting the Greenwood Police, Indianapolis Officer Jack Tindall and
Detective Thomas Richard Tudor went to Griffith's apartment building
around 10:15 p.m. on May 21st, where they noticed that Griffith
smelled of burnt smoke and had band-aids on his hands and fingers. At
Detective Tudor's direction, Officer Tindall transported Griffith to the
Greenwood Police Department where Officer John Laut noticed the
strong smoke odor and the band-aids while booking Griffith. Upon
further inspection, Laut found one of Lloyd's rings in Griffith's pocket.
Griffith was arrested between 10:20 p.m. and 11:10 p.m.

Greenwood Detective Patti Cummings directed Officer Tindall to bring
Griffith to the interrogation room for questioning. When Griffith
arrived, Detective Cummings advised him of his *Miranda* rights
during the early morning hours of May 22. Griffith was held at the
Greenwood Police Department before transport to the Johnson County
Jail, which caused his name to be excluded from the jail population list
of suspects who were to appear before the Magistrate within forty-
eight hours. Later that day, police transported Griffith to the Johnson
County Jail.

Hollis Kehrt was also arrested in connection with the present case. On
May 23rd, the Greenwood Police, a captain from the Johnson County
Jail, and the Johnson County Prosecutor wired Kehrt and placed him
in the cell with Griffith to obtain "incriminating information" about the
Georges' murder. Police placed Kehrt in the cell with Griffith before he
appeared before a magistrate. The police were unable to collect any
information, however, because they could not decipher any data from
the wire.

The following day, police asked Griffith's girlfriend Jamie Young to
make a controlled call in an effort to obtain incriminating information
from Griffith. Though police instructed Young not to reveal that the

> call was controlled, she immediately did so, and Griffith revealed nothing.
>
> The Greenwood Police prepared a probable cause affidavit on May 22nd, and revised it on May 23rd. On May 24th, Magistrate Craig Lawson conducted an initial hearing and determined that probable cause existed for Griffith's arrest.
>
> The following day, Griffith's wife Elizabeth phoned Greenwood police and told them that Griffith wanted to speak with them. One day later, a judge granted an order to draw a sample of Griffith's blood. While en route to the hospital for the blood draw, Griffith confirmed that he wanted to speak with the Greenwood police.
>
> At the later meeting with the Greenwood police, officers informed Griffith of his rights, including his right to counsel and right to remain silent, and Griffith signed a waiver. Griffith then confessed to the murder of Lloyd and Judy Georges and the burglary and arson of their home.

(Doc. 8-5 at 4–5). He also told the police where to find other evidence of his crimes, including the gas can, which he had discarded near a car wash and the police found (Doc. 8-7 at 6–7). He directed the police to a pond, where they found footprints that matched footprints from the Georges' yard (Doc. 8-7 at 7). And on the ground outside of Young's residence, the police found Lloyd's watch (Doc. 8-7 at 7).

## B.  Trial proceedings

The State initially charged Griffith with two counts of murder, Class B felony burglary, and Class B felony arson (Doc. 8-5 at 5). Griffith was represented by attorney Phil Wilson (Doc. 8-7 at 9). Wilson identified four main issues that would be central to his defense: Griffith's DNA at the crime scene, the voluntariness of

Griffith's confession, Griffith's mental health, and the legality of Griffith's arrest (Doc. 8-7 at 9).

To prepare for trial, Wilson secured defense funds (Doc. 8-7 at 9). He consulted with an expert on the voluntariness and reliability of Griffith's confession; the expert determined that it was voluntary (Doc. 8-7 at 9). Wilson had Griffith evaluated by a psychiatrist (Doc. 8-7 at 9). Although the doctor diagnosed Griffith with several mental/emotional conditions and disorders, he determined that Griffith was sane at the time of the crimes and competent to stand trial (Doc. 8-7 at 9–10). Wilson hired a private investigator (Doc. 8-7 at 10). Wilson also "spent significant time consulting with experts and conducting research relative to the DNA evidence, its use, application, and potential impact at trial" (Doc. 8-7 at 10). And he "conducted several evidentiary depositions prior to trial and regularly consulted with and reviewed evidence with Griffith to prepare for trial" (Doc. 8-7 at 10).

Wilson decided that the best way to deal with Griffith's DNA at the crime scene was to show that he had been an invited guest at the Georges' home (Doc. 8-7 at 10). Although the expert opined that Griffith's confession was voluntary, Wilson still filed a motion to suppress it (Doc. 8-7 at 10). When the State moved to increase the burglary charge to a Class A felony and to add a count for Class B felony arson, Wilson objected (Doc. 8-7 at 11). Wilson ultimately decided to pursue three defenses at trial: police and investigators rushed to judgment, the State violated Griffith's rights during the investigation, and the State could not meet its burden (Doc. 8-7 at 10–11).

## C. Direct appeal

On direct appeal to the Indiana Supreme Court,[2] Griffith, still represented by Wilson, raised four issues (Doc. 8-3). First, he argued that the trial court should have suppressed his confession because the police arrested him without a warrant or probable cause (Doc. 8-3 at 25–29). The supreme court determined that the police had probable cause:

> The evidence here indicates that Lloyd recently told a friend that his relationship with Griffith, who he called "Val," had become dire because he refused to purchase a vehicle for Griffith. Griffith's son confirmed that Val was Griffith. A neighbor reported that Lloyd argued with a black man who fit Griffith's description on his porch on the day of the fire. The Georges' car was missing and found ablaze two days later. A witness saw a black male carrying a gas can in the Georges' front yard and walk into the front door of their home. Furthermore, upon approaching Griffith's apartment, Officer Tindall immediately smelled the strong odor of smoke on Griffith and noticed band-aids on Griffith's hands and fingers. He also found one of Lloyd's rings in Griffith's pocket.

(Doc. 8-5 at 6).

Second, Griffith argued that the trial court should have suppressed his confession because the court did not appoint counsel for him during the probable cause hearing or when he confessed (Doc. 8-3 at 29–33). According to Griffith, this violated the Equal Protection Clause of the Fourteenth Amendment (Doc. 8-3 at 30–33). The supreme court concluded that the trial court correctly admitted his confession because "the Sixth Amendment right to appointed counsel at public

---

[2] At the time, criminal appeals for defendants sentenced to longer than 50 years went straight to the Indiana Supreme Court. *See Hopkins v. State*, 782 N.E.2d 988, 990 (Ind. 2003).

expense attaches at the moment an information or indictment is filed" (Doc. 8-5 at 8). And "Griffith does not contend he suffered any damage by virtue of what occurred during his preliminary hearing, and when he asked to speak with the police and eventually confessed, he did so with full knowledge that legal help at public expense was just at the horizon" (Doc. 8-5 at 8).

Third, Griffith argued that the trial court should have suppressed his confession because of the delay between his arrest and his probable cause hearing (Doc. 8-3 at 34–41). The State conceded, and the court agreed, that the 63-hour delay was unreasonable (Doc. 8-5 at 7). But the court concluded that "Griffith's confession was not the product of delay in bringing him before the magistrate" because his confession "did not occur until two days after he saw the magistrate. And it occurred because he asked to speak with officers from the Greenwood Police Department" (Doc. 8-5 at 7).

And fourth, Griffith argued that his confession should have been suppressed because it was coerced (Doc. 8-3 at 41–44). The court concluded that Griffith's confession was voluntary because he "signed a waiver after police informed him of his *Miranda* rights" and "asked his wife to inform police that he wished to speak with them" (Doc. 8-5 at 8). He "never invoked his right to remain silent …. He simply commented, 'I might as well not say anything more,' in response to the police not striking any deals with Griffith for his information. Yet, he continued to disclose information after this statement during the interrogation" (Doc. 8-5 at 8) (citation omitted). The court affirmed Griffith's convictions on May 16, 2003 (Doc. 8-5 at 1).

7

### D.  Post-conviction proceedings

On April 26, 2004, Griffith filed a petition for post-conviction relief (Doc. 8-1 at 18, -6 at 1–2, -7 at 19). The post-conviction court dismissed Griffith's petition on September 6, 2011, before reopening his case on October 3, 2011 (Doc. 8-6 at 5). After amendments, Griffith alleged ineffective assistance of trial and appellate counsel (Ex. 18[3]). Specifically, he argued that his trial counsel was ineffective for 31 reasons:

1. "Counsel failed to make a pretrial request pursuant to Ind. R. Evid. 404(b)."

2. "Counsel failed to pose adequate objections to improper 404(b) evidence …."

3. "Counsel failed to recognize and move to suppress and/or object to the use at trial of evidence obtained as a result of an unlawful, unreasonable warrantless search and seizure/arrest of Griffith …."

4. "Counsel failed to recognize the fraudulent nature of and attack directly the validity of the probable cause affidavit(s) …."

5. "Counsel failed to move to suppress and/or object to the use at trial of derivative evidence obtained through … detention and delays caused by State actors …."

6. "Counsel failed to recognize and argue that on Wednesday, May 24, 2000, when Griffith went before Magistrate Lawson, he had a 6th and 14th Amendment right to counsel …."

---

[3] Respondent attached Exhibits 1–17 to the response to order to show cause and attaches additional exhibits, beginning at 18, to this supplemental response.

7. "Counsel failed to recognize and move to suppress and/or object to the alleged confession … at trial on the grounds that … his statements made during the custodial interrogation were not given freely and voluntarily …."

8. "Counsel's failure to properly argue Griffith's lack of probable cause issues …."

9. "Counsel failed to … pose adequate objections to" evidence based on the "delay and detention prior to his transport to the Johnson County Jail …."

10. "Counsel failed to object to State's exhibit No. 32 (victim's gold watch)."

11. "Counsel failed to recognize and allege that, due to systemic defects in the preliminary/initial hearing system, for persons arrested without a warrant in Johnson County during May of 2000, Griffith was denied his Fourteenth … Amendment due process rights …."

12. "Counsel failed to recognize and object to, the State's presentation of, and[ ] the trial court's consideration of, extraneous evidence … as it determined whether there was probable cause for Griffith's warrantless arrest …."

13. "Counsel failed to recognize and challenge that the State, in the presence of magistrate Lawson, violated/interfered with Griffith's right to counsel …."

14. "Counsel failed to recognize and challenge the misapplication of the law and analysis regarding delay and detentions under the facts of Griffith's case."

15. "Counsel … agree[ed] to allow the State to file for an extension of time … so it could amend the charging information to add a sentencing enhancement of [life without the possibility of parole]."

16. "Counsel failed to recognize and challenge … requests filed by the State to amend the charging information, as untimely …."

17. "Counsel failed to recognize and challenge the fact that Griffith's right to remain silent was violated on Friday May 26, 2000, during his transport for blood draw …."

18. "Counsel failed to object during the State's opening argument as it revealed evidence/information previously undisclosed to the Defense …."

19. "Counsel failed to recognize and raise the issue of evidentiary harpoon, and, thus, move for a mistrial."

20. "Counsel failed to move for a mistrial after the state's motion to dismiss count VII (Vehicle Arson)."

21. "Counsel failed to request a final instruction to the jury after dismissal of Count VII …."

22. "Counsel failed to recognize that the wholesale release of evidence, from the guilt/innocence phase of trial, to the jury at the penalty phase, would create an impermissible risk of a disproportionate sentence …."

23. "Counsel failed to recognize and object to … prosecutorial misconduct …."

24. "[C]ounsel breached his duty to investigate …."

25. "Counsel failed to adequately move the trial court to discharge the jury, and impanel a new one prior to the state of trial."

26. "Counsel failed to lay a proper foundation for the introduction of vital DNA evidence needed to establish the physical presence, during the … crime, of three … unknown/unidentified suspects."

27. "Counsel failed to object to the consecutive sentences as being improperly based on misrepresented criminal history …."

28. "Counsel failed to maintain an appropriate level of familiarity with all relevant law."

29. "Counsel failed to recognize and object to certain intended instructions …."

30. "Counsel failed to recognize and articulate the difference between the Fifth … Amendment 'indication' necessary to cut off questioning … and the … request for counsel … necessary to invoke the Sixth … Amendment right to counsel."

31. "Counsel failed to recognize and object[ ] to the State's failure to lay a proper foundation … for the admission into evidence of the blood draw results and related testimony."

(Ex. 18 at 3–27) (emphasis omitted).

And Griffith argued that his appellate counsel was ineffective for 12 reasons:

1. "Appellate counsel failed to raise Griffith's probable cause claim under [the Indiana Constitution]."

2. "Appellate counsel failed to raise the amendment adding Griffith's [l]ife [w]ithout parole sentence."

3. "Appellate counsel failed to recognize and challenge, as fundamental error, Jury Instructions …."

11

4. "Appellate counsel failed to recognize and argue that on Wednesday, May 24, 2000, when taken in for his Preliminary hearing/Determination of Probable cause, Griffith had a 6th & 14th right to the appointment of indigent counsel …."

5. "Appellate counsel failed to recognize and raise Griffith Sixth … Amendment claim that the trial court's imposition of his LWOP sentence violated the Supreme Court's decisions in *Apprendi v. New Jersey* … [and] *Ring v. Arizona* …."

6. "Appellate counsel's failure to file for a rehearing … based upon mistake of fact …."

7. "Counsel failed to raise abuse of discretion for the trial Court's … admission of … evidence."

8. "Appellate counsel committed fundamental error by failing to raise as fundamental error the failure of trial counsel to recognize and challenge … prosecutorial misconduct …."

9. "Appellate counsel failed to recognize as fundamental error and present the claim that the trial outcome was fundamentally unfair … due to the injection of … evidence prescribed by Ind. Evidence Rule 404 (b) …."

10. "Appellate counsel failed to recognize as fundamental error and argue that State actors denied Griffith his … rights and entitlements …."

11. "Appellate counsel failed to recognize and challenge as fundamental error, abuse of discretion & denial of due process the trial court allowing the State to amend the charging information."

12. "Appellate counsel was ineffective for failing to raise as fundamental error his failure to object to admission of the blood draw results and related testimony …."

(Ex. 18 at 27–31) (emphasis omitted).

Griffith and the State filed dueling motions for summary judgment (Exs. 20–22). The court granted the State's motion for all but the following claims: trial counsel's failure to object to the arson charge in Count VII and increasing the burglary to a Class A felony, trial counsel's failure to investigate, trial counsel's failure to hire an expert on involuntary confessions, trial counsel's failure to introduce DNA evidence from the crime scene, trial counsel's failure to object to jury instructions and appellate counsel's failure to challenge the instructions, trial counsel's failure to know relevant law, appellate counsel's failure to request rehearing, appellate counsel's failure to raise racial issues, and appellate counsel's failure to allege a due process violation based on suppressed evidence (Ex. 23 at 42–45). After an evidentiary hearing, the post-conviction court concluded that Griffith did not receive ineffective assistance of counsel (Doc. 8-7 at 49).

### E. Habeas proceedings

In Ground Four of his habeas petition, Griffith alleges that Wilson was ineffective at trial and on appeal. Griffith contends that Wilson was ineffective at trial for 15 reasons:

1. "Failing to make a pretrial request for the State's intent to use 404(b) evidence …."

2. "Failing to … move to suppress derivative evidence obtained during and subsequent to Griffith's warrantless arrest …."

3. "Failing to attack … the validity of the probable cause affidavit(s) …."

4. "Failing to properly argue Griffith's lack of probable cause issues …."

5. "[F]ailing to move to suppress and/or object at trial to the alleged confession …."

6. "Failing to allege that because of systemic defects in the preliminary/initial hearing system, for persons arrested without a warrant in Johnson County during the month of May 2000, Griffith was denied his 14th Amendment equal protection/due process of law rights …."

7. "Failing to object to … evidence otherwise not available to the arresting officer during Griffith's warrantless arrest—in its review of whether there was probable cause for Griffith's warrantless arrest …."

8. "Failing to object … to the State's motion to amend the charging information by adding the LWOP sentencing enhancement."

9. "Failing to object to … prosecutorial misconduct …."

10. "Failing to argue that the trial court … abused its discretion when it permitted the State to make substantive amendments to the charging information several months beyond the omnibus date."

11. "Failing to move for a mistrial following the state's motion to dismiss count VII (Vehicle Arson) …."

12. "Failing to request, following dismissal of Count VII …, the court instruct the jury that while deliberating to disregard all evidence and related testimony regarding Count VII …."

13. "Failing to object to the wholesale release of evidence … to the jury during the penalty phase …."

14. "Failing to adequately move the trial court to discharge the jury, and impanel a new one prior to the start of trial."

15. "Failing to object to the giving of certain intended instructions …."

(Doc. 1 at 7–9) (emphasis omitted). And Griffith contends that Wilson was ineffective on appeal for seven reasons:

1. "[F]ailing to adequately set forth the facts necessary for a proper determination of Griffith's 4th Amendment … issues."

2. "[F]ailing to file a petition for rehearing …."

3. "Failing to … apply [precedent] regarding unreasonable delay and detentions …."

4. "Failing to … argu[e] the giving of certain instructions …."

15

5. "Failing to … articulat[e] the difference between the Fifth … Amendment 'indication' necessary to cut off questioning … and the 'unambiguous' request for counsel necessary to invoke the Sixth … Amendment right to counsel …."

6. "Failing to … argu[e] that Griffith's Sixth … Amendment jury right was violated when he was sentenced by the trial court to LWOP …."

7. "Failing to … argu[e] that the trial court denied Griffith his 14th Amendment right to due process of law, exceeded its statutory authority, and abused its discretion when it permitted the state to make substantive amendments to the charging information on January 24, 2001 …."

(Doc. 1 at 10–11).

## ARGUMENT

**The Court should still dismiss Griffith's petition with prejudice.**

In addition to being time-barred and procedurally defaulted, Griffith's 22 claims of ineffective assistance of counsel are meritless. He is not entitled to a writ of habeas corpus unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This Court reviews "the last reasoned opinion on the claim[s]." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, the post-conviction court had the last word because Griffith never filed a brief in the Court of Appeals of Indiana. For federal claims that the post-conviction court adjudicated on the merits, he must prove that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an

16

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision is contrary to federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and" reaches an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is also contrary to "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 405. But "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case" is not. *Id.* at 406. For example, if "a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim[,] … the state-court decision would be in accord with … *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim." *Id.*

If the state court "correctly identifie[d] the governing legal rule," then Griffith must prove that the court "applie[d] it unreasonably to the facts of [his] case." *Id.* at 407–09. It is not enough for him to show that the court applied federal law incorrectly because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011) (citing *Williams*, 529 U.S. at 410; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). He must demonstrate that all "fairminded jurists" would agree "that the

17

state court's decision conflicts with [Supreme Court] precedents." *Id.* at 102. That means the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. It is a difficult standard to meet "because it was meant to be." *Id.* at 102.

The clearly established federal law that governs claims of ineffective assistance of counsel is *Strickland v. Washington*, which requires a petitioner to show that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688–89, 694 (1984). Griffith was not entitled to "perfect representation, only a 'reasonably competent attorney.'" *Richter*, 562 U.S. at 110 (citing *Strickland*, 466 U.S. at 687). He had to show that his counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Id.* at 105 (quoting *Strickland*, 466 U.S. at 690). It is not enough to say that his counsel "deviated from best practices or most common custom." *Id.* (citing *Strickland*, 466 U.S. at 690). Although one mistake by his counsel could support a *Strickland* claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Id.* at 111.

On its own, the *Strickland* standard is "highly deferential." 466 U.S. at 689. But the standard is "doubly deferential" under AEDPA because "the question is not whether counsel's actions were reasonable. The question is whether there is any

18

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. The *Strickland* standard is general, "so the range of reasonable applications is substantial." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

The post-conviction court disposed of Griffith's claims in two orders: its March 4, 2020, order granting parts of the State's motion for summary judgment (Ex. 23), and its June 8, 2021, findings of fact and conclusions of law (Doc. 8-7). The court correctly identified the *Strickland* standard in each order (Ex. 23 at 13–15; Doc. 8-7 at 21–22), so its decision was not contrary to clearly established federal law. The court also applied *Strickland* reasonably.

## A.  The state court reasonably determined that Griffith's counsel was not ineffective at trial.

The state court made two general conclusions that doom Griffith's claims that his trial counsel was ineffective. First, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111. About Giffith's counsel's overall performance, the court concluded,

> An honest appraisal of the record reflects that Griffith received robust representation at both the trial and appellate level. Wilson effectively appraised the challenges presented by the evidence against Griffith and mounted a thoughtful and spirited investigation and defense. The examples of Wilson's efforts to effectively defend Griffith abound, including, but not limited to, the following: All evidence was closely examined by Wilson; Wilson consulted with Griffith and viewed evidence with him; Wilson conducted evidentiary depositions; Wilson obtained expert funds and utilized those funds to vet the voluntariness of Griffith's confession as well as his mental health; Wilson hired a

19

> private investigator; Wilson filed two (2) separate motions to suppress
> […] the list goes on.

(Doc. 8-7 at 48). Griffith cannot show that the court's conclusion was unreasonable because it was supported by the record (*see, e.g.*, Doc. 8-7 at 9–11). This reasonable conclusion would be sufficient to deny Griffith habeas relief on its own. *See Strickland*, 466 U.S. at 697 (explaining that "there is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one").

And second, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. The state court concluded that the evidence of Griffith's guilt— "most notably [his] confession to the burglary of the home of Judy and Lloyd Georges; the murders of Judy and Lloyd Georges; and the arson of their home"— was overwhelming (Ex. 23 at 21–22; *see also* Doc. 8-7 at 27, 30). Griffith cannot show that this conclusion was unreasonable because it was supported by the record (*see, e.g.*, Doc. 8-7 at 4–8).

Although these general conclusions are sufficient to deny Griffith's claims on the merits, the state court also reasonably rejected each of Griffith's individual claims that his trial counsel was ineffective. Respondent addresses them in the order that Griffith raises them in his petition but combines claims where appropriate.

### 1.  Not requesting Indiana Evidence Rule 404(b) evidence

The state court reasonably determined that Griffith's trial counsel was not ineffective for not requesting Indiana Evidence Rule 404(b) evidence before trial. The court addressed this claim on summary judgment (Ex. 23 at 26–28). The court determined that there was no reason for counsel to specifically request the evidence because he already knew about it and it was admissible (Ex. 23 at 27–30). This is a reasonable determination.

As the court explained (Ex. 23 at 27), "[t]he purpose of the reasonable notice requirement in Rule 404(b) 'is to reduce surprise and to promote the early resolution of questions of admissibility.'" *Hatcher v. State*, 735 N.E.2d 1155, 1158 (Ind. 2000) (quoting *Abdul-Musawwir v. State*, 674 N.E.2d 972, 975 (Ind. Ct. App. 1996)). Griffith's complaint concerned evidence that he committed theft and forgery by cashing the victims' checks (Ex. 18 at 3). But the record supports the state court's conclusion that his counsel knew about that evidence. In his confession, Griffith admitted to taking and cashing the checks (DA App. 123, 161, 174, 191–98). Young also discussed the checks in her statement (DA App. 830–31, 852–54, 856, 873–75). And Griffith's counsel specifically requested financial evidence, including checks, in discovery (DA App. 322, 569). So he was not surprised by the evidence when the State offered it at trial (*see* Trial Tr. 2421–32). In fact, he objected to it for relevancy (Trial Tr. 2424, 2432). He also argued, during closing argument, that the checks did not prove anything because Griffith had not been charged with crimes for taking and cashing the checks (Trial Tr. 2841–42). And the state court's conclusion

21

that the evidence was admissible is a state-law determination that a federal court cannot second-guess. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016).

### 2. Not challenging Griffith's warrantless arrest and related issues

The state court reasonably determined that Griffith's counsel was not ineffective for mishandling the issues related to Griffith's arrest. Griffith raises this as six separate claims. He argues that his counsel was ineffective for not moving to suppress evidence obtained after his arrest, not challenging the form of the probable cause affidavits, not properly arguing the probable cause issues, not objecting to his confession, not alleging systemic defects in Johnson County, and not objecting to evidence used for the probable cause determination. The court addressed these claims on summary judgment (Ex. 23 at 15–17). The court determined that the Indiana Supreme Court's decision on direct appeal foreclosed relief for Griffith (Ex. 23 at 15–16). This determination is reasonable because it is supported by the record.

Griffith's counsel did not perform deficiently or prejudice Griffith related to his arrest. He recognized that the legality of Griffith's arrest and the voluntariness of his confession were two of the four main issues central to his defense (Doc. 8-7 at 9). So he filed two motions to suppress Griffith's confession (DA App. 340–54, 356–57, 517, 553). In the first one, he argued that Griffith exercised his right to silence, but the police did not cut off questioning (DA App. 340–54, 356–57). And in the second one, he argued that the police did not have probable cause to arrest Griffith

22

and detained him too long before presenting him to a magistrate (DA App. 517–20, 553–68). The trial court held hearings on each motion (*see generally* Trial Tr. Vol. II; Trial Tr. 281–538). The court granted part of the first motion, suppressing Griffith's August 21, 2000, statement (DA App. 358–70). And for the other part, counsel moved to certify the order for interlocutory appeal (DA App. 384–99).

The Indiana Supreme Court's decision on direct appeal shows that there was nothing else that counsel could have done for Griffith. Most of Griffith's claims here relate to whether there was probable cause to arrest him. As court determined on direct appeal, there was:

> The evidence here indicates that Lloyd recently told a friend that his relationship with Griffith, who he called "Val," had become dire because he refused to purchase a vehicle for Griffith. Griffith's son confirmed that Val was Griffith. A neighbor reported that Lloyd argued with a black man who fit Griffith's description on his porch on the day of the fire. The Georges' car was missing and found ablaze two days later. A witness saw a black male carrying a gas can in the Georges' front yard and walk into the front door of their home. Furthermore, upon approaching Griffith's apartment, Officer Tindall immediately smelled the strong odor of smoke on Griffith and noticed band-aids on Griffith's hands and fingers. He also found one of Lloyd's rings in Griffith's pocket.

(Doc. 8-5 at 6). This evidence established a reasonable basis to believe that Griffith was guilty. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Griffith's claims also relate to the delay between his arrest and his appearance before a magistrate. When the Indiana Supreme Court considered this issue, it agreed with Griffith's counsel that the delay was unreasonable (Doc. 8-5). But the court held that the trial court correctly denied Griffith's motion to suppress

his confession because he did not confess until two days after he saw the magistrate (Doc. 8-5 at 7). Nothing Griffith's counsel could have argued would have changed that fact.

The Indiana Supreme Court additionally disagreed with Griffith's counsel that Griffith's confession was coerced. The record showed that his confession was voluntary because he signed a *Miranda* waiver, asked to speak with the police, and did not invoke his right to remain silent (Doc. 8-5 at 8). This was a reasonable determination that was supported by the record.

Finally, the Indiana Supreme Court determined that the lack of appointed counsel for Griffith was not a reason to suppress his confession because he had not been charged yet (Doc. 8-5 at 8). This conclusion tracks the law. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Griffith's counsel was stuck with the Supreme Court's precedent. And, as the state court observed, Griffith confessed "with the full knowledge that legal help at public expense was just at the horizon" (Doc. 8-5 at 8). This is supported by the record because the magistrate told Griffith that he could have appointed counsel at the initial hearing on May 24, 2000, and Griffith confessed two days later (Trial Tr. 1, 1782–87; State's Trial Ex. 48[4]).

### 3. Not objecting to the LWOP enhancement

The state court reasonably determined that Griffith's counsel was not ineffective for not objecting to the LWOP enhancement. The court addressed this claim on summary judgment (Ex. 23 at 36–38). The court determined that Griffith's

---

[4] A transcription of Griffith's interview begins on page 1797.

24

counsel was not ineffective because the amendment to add the enhancement was proper under Indiana law (Ex. 23 at 36–38). Because the court's determination was based on state law, this Court must defer to it. *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277.

### 4. Not objecting to prosecutorial misconduct

The state court reasonably determined that Griffith's counsel was not ineffective for not objecting to prosecutorial misconduct. The court addressed this claim on summary judgment (Ex. 23 at 33). The court determined that it was "unable to individually analyze the assertions of alleged prosecutorial misconduct because [Griffith] has failed to identify any specific statements which constitute such misconduct or otherwise cite to the transcript at trial" (Ex. 23 at 33). Even so, "any such errors did not undermine confidence in the outcome of the underlying trial" (Ex. 23 at 33). This is a reasonable application of *Strickland* because the Supreme Court put the burden squarely on the petitioner's shoulders and recognized that errors are unlikely to affect the outcome when the evidence is overwhelming. 466 U.S. at 687, 696. The court's determination is also supported by the record because Griffith was vague about the alleged prosecutorial misconduct in his petition for post-conviction relief (*see* Ex. 18 at 22–23).

### 5. Not challenging the charging amendments

The state court reasonably determined that Griffith's counsel was not ineffective for not objecting to the charging amendments. The court addressed this claim in its findings of fact and conclusions of law: "Stated succinctly, trial counsel,

Phil Wilson, did, in fact, object to the State's request to both add the arson count and increase the penalty on the burglary count" (Doc. 8-7 at 23). This is a reasonable determination because counsel cannot be said to be ineffective for not doing something that he did. And Griffith's counsel did object to the charging amendments (DA App. 408–10, 522–23).

### 6. Not moving for a mistrial or requesting a jury instruction after the State dismissed Count VII

The state court reasonably determined that Griffith's counsel was not ineffective for not moving for a mistrial after the State dismissed Count VII or requesting a jury instruction limiting the jury's use of the evidence supporting that count. The state court addressed the dismissal of the vehicle arson count on summary judgment (Ex. 23 at 26). The court concluded that "the evidence related to the vehicle arson was properly considered as that charge was, prior to its dismissal at the close of evidence, pending before the jury" (Ex. 23 at 26). Even if the evidence had not been admissible, there was "an absolute paucity of evidence that the State of Indiana introduced the evidence with the purpose of prejudicing the jury" (Ex. 23 at 26). As for Griffith's argument that his counsel should have requested a mistrial after the State dismissed the vehicle arson count, he "offer[ed] no legal authority whatsoever for this proposition" (Ex. 23 at 41). So the state court's decision was reasonable because it was based on state law and Griffith's failure to meet his burden under *Strickland*. *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277; *Strickland*, 466 U.S. at 687.

26

### 7. Not objecting to evidence during the penalty phase

The state court reasonably determined that Griffith's counsel was not ineffective for not objecting to evidence during the penalty phase of Griffith's trial. The court addressed this claim on summary judgment (Ex. 23 at 41–42). The court determined that Griffith's argument was "in direct contravention of applicable law" (Ex. 23 at 41). The applicable law, of course, is Indiana's, which provides that "[t]he jury or the court may consider all evidence introduced at the trial stage of the proceedings, together with new evidence presented at the sentencing hearing" (Ex. 23 at 42 (citing Ind. Code § 35-50-2-9(d)). This is another state-law determination. *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277.

### 8. Not moving for a new jury before trial

The state court reasonably determined that Griffith's counsel was not ineffective for not moving for a new jury before trial. The court addressed this claim on summary judgment (Ex. 23 at 34). The court determined that Griffith's counsel was not ineffective for not moving to discharge the jury panel because he "filed a 'Motion to Discharge Jury Panel' on August 15, 2001[,] … at the conclusion of jury selection" (Ex. 23 at 34). In the motion, counsel "asserted that the selected jury was not a jury of [Griffith's] peers based upon the racial composition of the jury. (All selected jurors were Caucasian and [Griffith] is African-American)" (Ex. 23 at 34). It was reasonable for the court to conclude that counsel was not ineffective for not doing something that he did. And the record supports the court's conclusion that counsel moved to discharge the panel (DA App. 662–63).

27

### 9. Not objecting to jury instructions

The state court reasonably determined that Griffith's counsel was not ineffective for not objecting to jury instructions. The court addressed these claims in its findings of fact and conclusions of law (Doc. 8-7 at 33–43). Its determination that Griffith's counsel was not ineffective for not objecting to the instructions was based almost entirely on state law. *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277.

### a. Preliminary and final instruction 3

Preliminary instruction 3 and final instruction 3 repeated the State's charging information for burglary (Doc. 8-7 at 12–13; Trial Tr. 1149, 2873).[5] As the state court recognized, the State made a mistake in the information by alleging that Griffith "broke or entered" the Georges' dwelling when the State needed to prove that he "broke and entered" (Doc. 8-7 at 33). *See* Ind. Code § 35-43-2-1 (1999). But, as the court also recognized, final instruction 10 correctly recited the elements of burglary (Doc. 8-7 at 33–34; *see* Trial Tr. 2877). So "the instructions read as a whole neither mislead the jury nor misstate the law" (Doc. 8-7 at 34). And, as discussed earlier, "[t]he evidence against Griffith is overwhelming" (Doc. 8-7 at 35). It was therefore reasonable for the court to "conclude[ ] that the jury could not have properly found that the State failed to meet its burden on the burglary count" (Doc. 8-7 at 35).

---

[5] The instructions are not numbered in the transcript, and it is not always obvious where one ends and the next one begins. Respondent's page citations correspond with Griffith's arguments about the instructions and the state court's order.

28

### b. Preliminary instruction 8 and final instruction 4

Preliminary instruction 8 and final instruction 4 explained the presumption of innocence, but they did not specifically tell the jury that it should presume Griffith's innocence throughout each stage of the trial (Doc. 8-7 at 12; Trial Tr. 1152–53, 2874). At the time of Griffith's trial, courts were not required to specifically instruct the jury that the presumption of innocence continued throughout each stage of trial (Doc. 8-7 at 37–38). *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277. So, the state court reasonably concluded, counsel was not ineffective for not anticipating the change in the law (Doc. 8-7 at 38–39). The court also determined "that the jury was properly and adequately informed of the controlling legal contours of the presumption of innocence" (Doc. 8-7 at 39–40). Because state law did not support an objection to the instruction and objecting would not have made a difference, the court's determination was reasonable.

### c. Final instructions 11 and 12

Final instructions 11 and 12 defined accomplice liability (Doc. 8-7 at 13–14; Trial Tr. 2878). The state court determined that Griffith's counsel was not ineffective for not objecting to these instructions because the trial court properly gave them under Indiana law (Doc. 8-7 at 35–36). *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277. And Griffith's counsel used "this instruction in his closing statement to attempt to benefit Griffith. Wilson argued that the instruction was a tacit acknowledgement by the State of Indiana that somebody other than Griffith

29

had committed these offenses" (Doc. 8-7 at 36). The record supports the court's

conclusion (*see* Trial Tr. 2810, 2825).

### d. Final instructions 14 and 20

Final instruction 14 was about intent, and final instruction 20 was about

motive (Doc. 8-7 at 14; Trial Tr. 2879–80). The state court concluded, "The evidence

Griffith presented at the hearings relative to these instructions was

incomprehensible to the court. Griffith offered no legal justification for his

allegation(s) of error as it relates to these instructions and his factual assertions

were unformed and indecipherable" (Doc. 8-7 at 40). This was a reasonable

determination that Griffith failed to meet his burden under *Strickland* (*see* Ex. 18

at 25). Griffith's arguments about these instructions have not gained any clarity. He

argues that instruction 14 "instructed the jury that intent may be inferred, thereby,

relieving the State of the burden of proving intent beyond a reasonable doubt" (Doc.

1 at 9). But the jury must infer intent in most cases. *See, e.g.*, *Stanley v. State*, 531

N.E.2d 484, 485 (Ind. 1988) (citation omitted) ("Because intent is a mental state of

the actor, the trier of fact must resort to reasonable inferences based upon

examination of the surrounding circumstances to determine intent."); *Kiefer v.*

*State*, 761 N.E.2d 802, 805 (Ind. 2002) ("Intent to kill may be inferred from the

nature of the attack and the circumstances surrounding the crime.") (citing *Nunn v.*

*State*, 601 N.E.2d 334, 339 (Ind. 1992)). And he argues that instruction 20 "had the

effect of focusing the jury's attention on [404(b)] evidence the State singled out as

evidence of motive" (Doc. 8-7 at 9). But Griffith's argument depends on the evidence

30

about cashing the Georges' checks being inadmissible, and the state court determined that the evidence was admissible (Ex. 23 at 30).

### e. Final instruction 32

The state court did not specifically address Griffith's claim about final instruction 32. That instruction provided,

> These instructions do not contain any information concerning the penalties that could be imposed upon a conviction. The Court or Judge is solely responsible for assessing the penalty within a broad range of penalties. The law has been so written that you may make your decisions without being influenced by the apparent severity or leniency of the sentence.

(Trial Tr. 2885). Griffith argued that the instruction "was meant to relieve the jury of any sense of responsibility for any sentence imposed" (Ex. 18 at 25). Although the court did not specifically address Griffith's claim, his argument was like the argument that he made about the instructions in the next subheading, so the court likely would have reached the same conclusion: Griffith's argument is "inscrutable" Doc. 8-7 at 40). Even so, Griffith's counsel did not perform deficiently or prejudice Griffith by not objecting to final instruction 32 because it correctly stated the law, so the trial court would have overruled any objection to it. *See Jones v. State*, 425 N.E.2d 128, 133 (Ind. 1981) (rejecting a challenge to a nearly identical instruction).

### f. Penalty phase instructions 1, 6, 11, 13, 21, and 24

Penalty phase instructions 1, 6, 11, and 13 referred to the jury's "recommendation" for a sentence of life without parole (Doc. 8-7 at 15–16; Trial Tr. 2950–51, 2953, 2955, 2958–59). According to Griffith, these instructions "minimize[ed] any sense of responsibility for any sentencing decision" and "each

31

juror could have found a different aggravator proved and still have been unanimous in their finding that the State proved the existence of at least one aggravator beyond a reasonable doubt (as opposed to the same aggravator)" (Ex. 18 at 25). The state court determined that "Griffith's argument at the evidentiary hearings regarding LWOP instructions 1, 6, 11, and 13 is inscrutable. The court is unable to discern any cognizable legal or factual argument raised by Griffith relative to these instructions" (Doc. 8-7 at 40). The record supports this determination (*see* Ex. 18 at 25). And Griffith argues that his counsel should have objected to penalty phase instructions 21 and 24 for the same reasons as penalty phase instruction 1 (Doc. 1 at 9). It was reasonable for the court to hold that Griffith did not meet his burden under *Strickland* when it could not decipher his arguments.[6]

### g. Penalty phase instructions 14–17, 19, 20, 22

Finally, penalty phase instructions 14–17, 19, 20, and 22 told the jury it could consider the evidence from the guilt phase, provided the sentencing ranges, outlined credit time, stated that the governor could grant relief, and reminded the jury that its recommendation was not mandatory (Doc. 8-7 at 16–18; Trial Tr. 2956–58). Griffith made two arguments about these instructions. In his amended petition, he argued that the instructions violated Indiana law (Ex. 18 at 25). They did not (*see* Ex. 1 at 23–42). *See* I.C. § 35-50-2-9. And at the hearing, he argued that the instructions violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v.*

---

[6] The instructions also correctly stated the law. *See* Ind. Code § 35-50-2-9 (1997).

*Arizona*, 536 U.S. 584 (2002) (PCR Tr. Vol. III 107–10). The state court reasonably determined that they did not (Doc. 8-7 at 41–43).

The state court reasonably determined that Griffith's counsel was not ineffective for not objecting to these instructions based on *Apprendi* and *Ring* because the court would not have sustained an objection. In *Apprendi*, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Ring*, the Court held that *Apprendi* applies to a capital sentence. 536 U.S. at 609. But as the state court also recognized, it was not until after Griffith's trial (and appeal) when the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis and citations omitted). *Apprendi* did not give Griffith's counsel a reason to object to the jury instructions because the trial court did instruct the jury that it had to find at least one aggravating circumstance beyond a reasonable doubt (Trial Tr. 2958–59). The state court reasonably determined that Griffith's trial counsel was not ineffective.

## B. The state court reasonably determined that Griffith's counsel was not ineffective on appeal.

The state court also reasonably determined that Griffith's appellate counsel was not ineffective. Griffith raises seven claims of appellate-counsel ineffectiveness, which overlap with some of his trial-counsel claims (Doc. 1 at 10–11). Like his trial-

counsel claims, the state court addressed some of them in its order on summary judgment and some of them in its findings of fact and conclusions of law. Respondent will address Griffith's claims in the order that he raises them but combine claims where appropriate.

### 1. Warrantless arrest and related issues

Griffith argued that his appellate counsel was ineffective in the manner that he challenged his warrantless arrest and related issues (Ex. 18 at 27–30). He raises these claims in his habeas petition in Ground Four, subsection III, sub-subsections A, C, and E (Doc. 1 at 10–11). The state court addressed his arguments on summary judgment with the corresponding trial-counsel claims (Ex. 23 at 15–17). Its analysis of the appellate-counsel claims was reasonable for the same reasons. In short, Griffith's counsel raised the claims on appeal, the Indiana Supreme Court correctly rejected them, and Griffith did not show what else his counsel could have done that had a reasonable probability of changing that outcome (*see* Doc. 8-5 at 5–8).

### 2. Not filing a petition for rehearing

The state court reasonably determined that Griffith's counsel was not ineffective for not filing a petition for rehearing. The court addressed this claim in its findings of fact and conclusions of law (Doc. 8-7 at 44–45). The court could have concluded that this was not a viable claim because Griffith did not have a Sixth Amendment right to counsel on rehearing. The Sixth Amendment right to counsel only "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). And Indiana rehearing is discretionary. *See* Ind. Appellate

34

Rule 54 (2003). But even if *Strickland* applied to Griffith's counsel's decision to not

file a petition for rehearing, the state court reasonably determined that Griffith did

not meet his burden (Doc. 8-7 at 44–45). Griffith's counsel testified at the post-

conviction hearing that he did not file a petition for rehearing because there was no

basis for one (PCR Tr. Vol. II 24–25). This was a reasonable assessment of the

Indiana Supreme Court's opinion (*see* Doc. 8-5 at 5–8).

### 3. Not challenging jury instructions

The state court reasonably determined that Griffith's counsel was not

ineffective for not challenging the same jury instructions that Griffith argued his

trial counsel should have challenged. Griffith incorporated his trial-counsel

argument into his appellate-counsel argument (Ex. 18 at 27). The state court

addressed the claims together in its findings of fact and conclusions of law (Doc. 8-7

at 33–43). Just as it was reasonable to conclude that counsel did not perform

deficiently or prejudice Griffith by not objecting to the instructions at trial, it was

reasonable to conclude that counsel did not perform deficiently or prejudice Griffith

by not raising the instructions on appeal. And Griffith's appellate-counsel claims

were even weaker than his trial-counsel claims because he did not object to the

instructions at trial, so he would have had to prove fundamental error, which is a

heavy lift. *See Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000).

### 4. Not challenging Griffith's sentence under *Apprendi*

The state court reasonably determined that Griffith's counsel was not

ineffective for not challenging Griffith's sentence under *Apprendi*. The state court

addressed this claim on summary judgment (Ex. 23 at 38–40). The court concluded that Griffith's LWOP sentencing tracked *Apprendi*, so there was no reason for counsel to raise the issue and no reasonable probability that it would have changed the outcome of Griffith's appeal (Ex. 23 at 39–40). This is a reasonable determination because it is correct. As argued above, except for prior convictions, *Apprendi* requires juries to find "any fact that increases the penalty for a crime beyond the prescribed statutory maximum … beyond a reasonable doubt." 530 U.S. at 490. As the state court recognized (Ex. 23 at 39–40), the trial court did instruct the jury that it had to find at least one aggravating circumstance beyond a reasonable doubt to recommend LWOP (Trial Tr. 2958–59).

### 5. Not challenging the charging amendments

The state court reasonably determined that Griffith's appellate counsel was not ineffective for not challenging the charging amendments that Griffith argued his trial counsel should have challenged. The court addressed Griffith's claim about adding the LWOP enhancement on summary judgment (Ex. 23 at 36–37). The court determined that Griffith's counsel was not ineffective for not raising that issue because the State properly added the enhancement under state law, so there was no meritorious issue for counsel to raise and no reasonable probability of success (Ex. 23 at 36–37). The court's determination was based on state law, so this Court cannot second-guess it. *See Estelle*, 502 U.S. at 67–68; *Miller*, 820 F.3d at 277.

The state court also reasonably determined that Griffith's counsel was not ineffective for not objecting to the addition of the arson count. The court addressed

36

this claim in its findings of fact and conclusions of law (Doc. 8-7 at 23–24). The court

determined that there was no reason for Griffith's counsel to raise that issue on

appeal because the State dismissed the charge before it went to the jury (Doc. 8-7 at

23–24). This was a reasonable determination because raising the charging

amendment could not have resulted in any relief for Griffith, and Griffith's counsel

raised issues that could have resulted in the reversal of his convictions (*see* Doc. 8-7

at 27 ("Had Wilson prevailed on direct appeal on the issue of either the warrantless

arrest or the confession, the State's case would have been undeniably weakened,

perhaps gutted.")).

As for the burglary enhancement, the court reasonably determined that

Griffith's counsel was not ineffective for three reasons (Doc. 8-7 at 24–27). First,

Griffith's counsel would not have prevailed because he would have had to prove that

Griffith was prejudiced by the amendment, and Griffith did not demonstrate any

prejudice (Doc. 8-7 at 24–26). This is a state-law determination. *Estelle*, 502 U.S. at

67–68; *Miller*, 820 F.3d at 277. Second and relatedly, the issue was not clearly

stronger than the issues that Griffith's counsel raised, which, again, could have

resulted in the reversals of his murder convictions (Doc. 8-7 at 26–27). And third,

Griffith failed to rebut the presumption that his counsel made a reasonable

strategic decision (Doc. 8-7 at 27). These reasons were supported by the record.

There was a fourth reason that the court could have relied on. The State

initially charged Griffith with burglary as a Class B felony but amended the

information to allege that he committed burglary as a Class A felony (Doc. 8-7 at

37

24–25; DA App. 401). The jury found him guilty of the Class A felony (Trial Tr. 2893). At sentencing, however, the trial court reduced Griffith's conviction to a Class B felony—back where it began—for state double jeopardy concerns (Trial Tr. 3023). So there was nothing for Griffith's counsel to gain by raising the amendment issue on appeal. Griffith's appellate counsel was not ineffective.

## CONCLUSION

The Court should dismiss Griffith's petition for a writ of habeas corpus with prejudice.

Respectfully submitted,


THEODORE E. ROKITA
Indiana Attorney General

/s/ Jesse R. Drum
Jesse R. Drum
Assistant Section Chief, Criminal Appeals

OFFICE OF INDIANA ATTORNEY GENERAL
TODD ROKITA
Indiana Government Center South
302 West Washington Street, Fifth Floor
Indianapolis, Indiana 46204-2770
317-234-7018 (telephone)
Jesse.Drum@atg.in.gov

**EXHIBITS TO RESPONDENT'S SUPPLEMENTAL RESPONSE TO ORDER
TO SHOW CAUSE**

Respondent submits the following as exhibits to the Supplemental Response to Order to Show Cause:

Exhibit 18:   Amended Petition for Post-Conviction Relief, *Griffith v. State*, No. 41C01-0405-PC-1;

Exhibit 19:   Response to Amended Petition for Post-Conviction Relief, *Griffith v. State*, No. 41C01-0405-PC-1;

Exhibit 20:   State's Motion for Summary Judgment, *Griffith v. State*, No. 41C01-0405-PC-1;

Exhibit 21:   Griffith's Motion for Summary Judgment, *Griffith v. State*, No. 41C01-0405-PC-1;

Exhibit 22:   Griffith's Affidavit in Support of Summary Judgment, *Griffith v. State*, No. 41C01-0405-PC-1; and

Exhibit 23:   Order on Summary Disposition, *Griffith v. State*, No. 41C01-0405-PC-1.

39

**CERTIFICATE OF SERVICE**

I certify that on August 1, 2024, I served the foregoing document upon the following person by first-class U.S. Mail, postage prepaid:

Fernando Griffith
105877
Miami Correctional Facility
3038 West 850 South
Bunker Hill, Indiana 46914-9810

/s/ Jesse R. Drum
Jesse R. Drum

40